GRIFFIN, P. J.
 

 Plaintiffs, cross-defendants and appellants Navajo Freight Lines, Inc., a corporation (hereinafter referred to as Navajo) and Alva 0. Young brought this action for damages against defendants, cross-complainants and respondents L. E. Shafer and Fred Talbot, arising out of a two-truck collision on United States Highway 99 just south of Fresno at 3:35 a. m. on January 11, 1957.
 

 Respondent Talbot was driving a heavily-loaded tractor-trailer owned by respondent Shafer in a southerly direction in the right-hand lane, in a posted zone of 55 miles per hour, with headlights burning, at a speed estimated by him to be between 45 and 48 miles per hour. An officer testified Talbot told him at the time that he was traveling 45 miles per hour. Other witnesses placed the speed at a greater rate.
 

 Appellant Young was driving a heavily-loaded tractor-trailer, owned by Navajo, easterly out of a large private service station just west of an access road, with intent to cross it, the southbound lanes of the main highway, and turn to his left to go north thereon toward Fresno in one of the three northbound lanes. There was a divider strip about 44 feet wide between the north and southbound main highway lanes planted to oleander bushes. Immediately west of the main southbound lanes ran a two-lane paved access road parallel to this main highway road, with a divider strip about
 
 *190
 
 20 feet wide which also contained oleander bushes and was separated from the main highway road by a fence and a concrete curb; no other highway leading either from the east or west intersected this roadway or highway at this point. Immediately to the east of the service station entrance and across the access road paralleling the main highway portion was a break in the westerly island about 60 feet in width and this portion was oiled and could be and was used to travel to and from the access road and to enter the service station from the main highway. There was a somewhat similar break in the highway at that point in the easterly island, allowing traffic to cross the main highway from the access road and proceed north on the easterly portion of the main highway. The night was clear and the terrain practically level. The evidence indicates there was no stop sign at the entrance to the access road or the main highway on leaving the service station, although there is evidence that at a point in the westerly island a boulevard stop sign was erected after the accident took place.
 

 Young, the driver of the Navajo truck, testified generally that after filling his truck with gasoline at the service station, he traveled in an easterly course, stopped his truck at the frontage road, determined that it was clear of traffic, pulled forward in an easterly direction across it and stopped again about 12 to 14 feet from the west edge of the southbound lane of the main highway, and, after looking north and seeing no southbound traffic approaching, he started to cross the southbound lane with his truck and trailer and reached a speed of two and one half to four miles per hour; that he then turned his attention to his right to see if there was northbound traffic approaching and none was visible; that after the front end of his truck reached the paved area between the northbound and southbound lanes, and at a point about 15 to 18 feet east of the edge of the southbound lanes, a split second before the crash he saw the headlights of the Shafer equipment a short distance away; that its lights appeared to be dim and the front portion of its engine collided into the side of the Navajo truck between the cab and the dual-drive wheels; that the point of this impact was at the easterly edge of the southbound lanes. The impact was so severe that the Navajo semitrailer was cut in two just behind its attachment to the tractor and came to rest about 80 feet south and west of the point of impact in the right-hand or westerly southbound lane
 
 *191
 
 of Highway 99, after leaving locked skid and gouge marks for about 69 feet.
 

 The Shafer equipment left about 78 feet of broad black tire marks before the impact, commencing in the westerly southbound lane of the main highway, veering into the easterly southbound lane and extending to the point of impact. Its semitrailer and pull trailer broke away and came to rest between
 
 51 to 75
 
 feet south of the point of impact. There is some reference to a claimed “S” curve in the main highway about one-quarter mile north of the point of collision, but the record does not indicate that this slight deviation in the highway should be so described.
 

 Talbot testified he first saw the Navajo equipment when it was moving 10 to 12 feet from the west edge of the main highway when he was about 225 feet to 150 yards away but did not anticipate its entry onto the main highway until he was about 75 feet from it. Talbot received minor injuries and Young suffered an aggravation of a preexisting back condition.
 

 On this appeal appellants argue that the relative speed of the two vehicles demonstrates that at the time Young started across the main highway the Shafer equipment was in the so-called “S” curve and was hidden from his view; that there was, in fact and in law, an intersection at this place and respondents were under a duty to yield the right of way to him. It is further argued that Young was not guilty of any negligence; that respondents were guilty of negligence as a matter of law and, contrary to the jury’s verdict for respondents, appellants should have recovered. The jury awarded a judgment for damages to respondents on their cross-complaint and found against appellants on their complaint. This appeal followed.
 

 The exact nature of Highway 99 at this point is somewhat confusing. From the evidence produced, certain elements are lacking which prevent it from being defined as a “freeway” under section 81.5, Vehicle Code.
 
 *
 
 The same is true as to the description of a “through highway” as defined by section 82.5, Vehicle Code, in that no stop sign was there erected as provided for by law. But, as presently posted, it has all the necessary elements of a “through highway” and the right of way rule would be contained in section 552, Vehicle Code.
 

 Section 81 of the Vehicle Code recites: “ ‘Street’ or ‘high
 
 *192
 
 way’ is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel.” The principal question raised by appellants is whether appellants’ truck was entering an “intersection” within the meaning of section 86, Vehicle Code, defining it as “area embraced within the prolongation of the lateral curblines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling-up on different highways joining at any other angle may come in conflict.” The trial court refused the giving of an instruction in the language of section 86,
 
 supra,
 
 and the respective duties of drivers of vehicles approaching an intersection under section 550, Vehicle Code. It gave one based on section 81, Vehicle Code, followed by one in the language of section 553, Vehicle Code, to the effect that “The driver of a vehicle about to enter or cross a highway from any private road or driveway . . . shall yield the right of way to all vehicles approaching on said highway.” This was followed by a similar and explanatory instruction, offered by appellants, that “this does not mean that in every case the vehicle crossing such highway must yield the right of way to every vehicle approaching on the public highway. Bach case must turn upon its own facts, and the effect of the section of the Vehicle Code above quoted (§ 553) is only to place upon the driver about to enter or cross the highway the duty to use ordinary care to look for and observe approaching vehicles and not to proceed across the highway if a vehicle is coming upon that highway unless, as a reasonably prudent and cautious person he determines and believes and has a right to believe that he can pass in front of the other in safety...”
 

 It is appellant’s argument that this accident occurred at an “intersection” and that their evidence showed they had the right of way and accordingly they were entitled to the benefit of these proffered instructions bearing on the right of way rule at intersections. They rely upon
 
 Kashevaroff
 
 v.
 
 Webb,
 
 73 Cal.App.2d 177 [166 P.2d 306]. That ease involved a pedestrian cross-walk in an open area into which five streets debouch. It held that the open area was a highway within the definition of Vehicle Code, section 81, and also a roadway within the definition of Vehicle Code, section 83. , See also
 
 Mace
 
 v.
 
 Watanabe,
 
 31 Cal.App.2d 321 [87 P.2d 893].
 
 Blanton
 
 v.
 
 Curry,
 
 20 Cal.2d 793 [129 P.2d 1], another crosswalk case, held that there was only one intersection, rather than two,
 
 *193
 
 where the roadways were separated by a parkway and another street terminated at the intersection. To the same effect is
 
 Dawson
 
 v.
 
 Williams,
 
 127 Cal.App.2d 38 [273 P.2d 75]. Appellants argue that there was an intersection here because traffic from both directions on the frontage road was permitted to and did travel parallel to the southbound lanes of the main highway and crossed over or onto said highway at an angle; that the frontage road is a highway distinct and apart from the northbound and southbound lanes of the main highway and that the two crossovers (one between the frontage road and the southbound lanes and the other between the center islands) are themselves separate highways.
 

 There is authority supporting the view taken by the trial court that Highway 99 was but one highway divided into separate lanes of travel and accordingly no intersection was involved. In
 
 Sherr
 
 v.
 
 East,
 
 45 Del. 240 [71 A.2d 262], cited in 53 A.L.R.2d 861, it was held that
 
 “a
 
 dual highway, although divided, is but a single highway, so that a crossover which commences at one lane and proceeds through a grass plot to end at the other lane is nothing more than an integral part of the dual highway itself, and an intersection is not thus created, even though it is not necessary in all cases that to constitute an intersection the highways cross one another. The court pointed out that an entirely different situation would result where the crossover was an extension of another highway that crossed over or joined the dual highway.” In that case, no other highway joined or crossed the dual highway and no other means of ingress or egress is indicated. The question involved was whether one ear was overtaking and passing another in an intersection.
 

 The assistant state engineer testified that all lanes of Highway 99, including the access roads, were built and maintained by the state; that the fence and curb between the access road and the southbound lane of the main highway are for the purpose of preventing traffic from the access road from traveling onto the southbound traffic lane, except at designated locations, and that the same is true as to the islands between the southbound lane and the northbound lane of the main highway. Section 144, Streets and Highways Code, authorizes the state highway engineer to divide or separate any state highway into separate roadways. Section 145 thereof provides authority to construct local service roads on and along such highways and to separate and divide such service roads from
 
 *194
 
 the main thoroughfare by raised curbs or dividing sections or by other appropriate devices and stated it was unlawful to drive any vehicle into the main thoroughfare from any such service road except through an opening in the said dividing curb. It therefore appears from this general language that the highway itself consists of all the various lanes. Section 525, Vehicle Code, provides that it is unlawful to make a left turn at any such divided highway, except through an opening in such barrier as designated. No reference is therein made to such openings as an intersection. Viewed in this light, no intersection existed within the meaning of section 86, Vehicle Code, and the court was authorized to reject appellants’ instructions on the right of way rule at intersections as proffered.
 

 On the other hand, if this could be considered an intersection under that section, the question immediately arises as to the extent of the intersection. Under
 
 Blanton
 
 v.
 
 Curry, supra,
 
 only one intersection was formed, though there were two separate roadways. Here we have three separate roadways. We believe the court was authorized in holding that only one intersection was formed. The open area therein was a part of the highway.
 
 (Kashevaroff
 
 v.
 
 Webb, supra,
 
 p. 182.) In the instant case, appellant was proceeding from a private driveway to cross a highway within the meaning of section 553, Vehicle Code, and the instruction given on that subject would properly apply.
 

 In addition, it appears that appellants offered a similar instruction to the same effect as that-offered by respondents concerning appellants’ rights in reference to the right of way rule under section 553, Vehicle Code, which instruction was given. It cannot now be reasonably said that the court should have also given appellants’ instruction on the duties and liabilities of drivers at an intersection. These two rules, concerning the right of way, if given, would certainly have a tendency to confuse and mislead the jury. In 3 Within, California Procedure, 2258, it was said: “Likewise, the appellant cannot complain of an erroneous instruction where he requested the very instruction or one substantially similar to it (citing eases). Nor can he object to the propriety of instructing on a particular issue as to which he proposed an instruction himself (citing cases).” Citing
 
 Jentick
 
 v.
 
 Pacific Gas & Electric Co.,
 
 18 Cal.2d 117 [114P.2d 343].
 

 Here we have one of the most heavily traveled north-south highways in this part of the state. It would be only common
 
 *195
 
 prudence that one entering it, under the circumstances here related, should do so with reasonable caution and apprehension of the danger presented, rather than attempt to rely upon a questioned or unreasonable interpretation of the law pertaining to his rights at the time. It appears to us that the court’s interpretation of the law applicable at the time was reasonable. Laws are made for the practical governance of men, and it is axiomatic that construction of a statute which appears to be reasonable is to be preferred.
 
 (Kashevaroff
 
 v.
 
 Webb, supra,
 
 p. 183; 23 Cal.Jur. 722; Civ. Code, § 3542.) The trial court gave voluminous instructions on ordinary care and negligence, and said:
 

 “When the law says that one person has a right of way over another, its purpose simply is to establish a practical basis for necessary courtesy on the highway, and its meaning is that when at any given moment of time, two persons, neither of whom then occupies the space in question, desire to proceed into the same place on the highway, one of them shall yield. The other has the privilege of the immediate use of the space in question. That privilege is his right of way. Failure to yield to one to whom the law has given the right of way is presumably negligence. ’ ’
 

 The court then read appellants’ proffered instruction: “As I have before told you, Section 553 of the Vehicle Code provides that the driver of a vehicle about to enter or cross a highway from any private road or driveway shall yield the right of way to all vehicles approaching on said highway.” No prejudicial error resulted in the failure of the trial court to give the proffered instructions.
 

 The next claim is that the evidence shows respondents were guilty of contributory negligence as a matter of law. We have examined the reporter’s transcript, consisting of over 900 pages, and all exhibits and diagrams received in evidence in an attempt to determine this question. Without relating further facts, many of which are in dispute, particularly as to the speed of respondents’ truck (see Veh. Code, § 515), we are convinced that it could not be fairly said that respondents were guilty of negligence as a matter of law, or, if so, that such negligence was a proximate cause of the accident.
 
 (Burtt
 
 v.
 
 Bank of Calif. Nat. Assn.,
 
 211 Cal. 548 [296 P. 68].)
 

 Appellants next claim the court refused to adequately instruct the jury on the issue of proximate cause. The trial judge gave appellants’ instruction defining proximate
 
 *196
 
 cause, but struck from it a paragraph emphasizing the fact that before either party could be barred from recovering damages, it must appear not only that some conduct on his part constituted negligence but also that such conduct was a proximate cause of the accident. The portion stricken might well have been given. In other instructions, however, the court instructed in this respect and said “if your finding should be that both drivers were guilty of negligence which proximately caused the collision, then no one would be entitled to recover . . .” and that “in order to amount to contributory negligence, a person’s conduct must be not only negligent, but also one of the proximate causes of his or her injury. ’ ’ No prejudicial error is indicated.
 
 (Wirthman
 
 v.
 
 Isenstein,
 
 182 Cal. 108 [187 P. 12].)
 

 Lastly, the court gave, at respondents’ request, an instruction to the effect that Navajo Freight Lines was engaged in interstate commerce and as such was subject to the rules and regulations of the Interstate Commerce Commission, including the Motor Carrier Safety Regulations. Then follows an excerpt from section 195.4 of part 190 thereof regarding the length of time any one driver could drive a truck in any 24-hour period. There was some confusion as to the number of hours of work and of rest taken by Young on the trip before arriving in Bakersfield enroute from New Mexico. A driver’s log was kept but apparently not produced at the trial. Appellants contend, and we conclude, that it was error to give such an instruction where there was not sufficient evidence produced indicating a violation of the rules and regulations.
 
 (Davenport
 
 v. Stratton, 24 Cal.2d 232, 254 [149 P.2d 4];
 
 Balthrop
 
 v.
 
 Atchison, T. & S. F. Ry. Co.,
 
 167 Cal.App.2d 437, 444 [334 P.2d 1041].) However, we conclude, from an examination of the entire evidence and record, that it is not reasonably probable, in the absence of such error, that a result more favorable to the appellants would have been reached.
 
 (People
 
 v.
 
 Watson,
 
 46 Cal.2d 818 [299 P.2d 243];
 
 Smith
 
 v.
 
 Brown,
 
 102 Cal.App. 477 [283 P. 132]; Cal. Const., art. VI, § 4%.)
 

 Judgment affirmed.
 

 Shepard, J., and Coughlin, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied May 18, 1960.
 

 *
 

 Reporter’s Note: Vehicle Code citations are to sections as numbered prior to 1959 recodification.