394 P.2d 192

**Iona MARKS, Appellant,**

**v.**

**Leslie N. GOODDING, Appellee.**

No. 7072.

Supreme Court of Arizona.

En Banc.

July 20, 1964.

Jack C. Cavness, Phoenix, and Walter McMillen, Phoenix, for appellant.

Chandler, Tullar, Udall & Richmond, Tucson, for appellee.

YALE McFATE, Superior Court Judge.

In November, 1956, appellant, was traveling from Clifton to Tucson, in her Chevrolet pick-up truck which was driven by her friend John Eicks. Proceeding westerly on the north roadway of a divided four-lane

highway, they had reached a point about 25 miles from Tucson were they approached a small place on the north side of the highway called Desert Inn.

The two roadways comprising this divided highway are separated by a distance of at least 50 feet, and each roadway consists of two lanes. At a point south of the Desert Inn, the two roadways are connected by a gravel road which joins them at right angles. This connecting road enables the traffic proceeding in the left lane of either roadway to turn and gain access to the other roadway, and also enables the vehicles of patrons of Desert Inn to cross over the north roadway to the south roadway and vice versa.

Appellee operated a 1947 Chevrolet sedan. He had parked his automobile at the Desert Inn. After making a purchase there he entered his car, turned it in a southerly direction and very slowly moved forward to the main highway about 20 feet distant, with the intention of crossing the west bound lanes and turning east. Before he got his car on the travelled portion of the highway, he looked easterly to his left and saw the appellant's pick-up truck coming down the highway toward him at a distance he then estimated to be 200 to 300 yards away. He did not again look at that automobile or in that direction, and without slowing or stopping, proceeded directly onto the highway and, gradually picking up speed, crossed into the left lane, in the path of the oncoming truck. A collision resulted.

Both appellant and her driver saw the appellee's automobile from the time he entered his car until the moment of impact. They assumed he intended to cross the highway, but thought he would stop and give them the right-of-way. As appellee's car moved forward, appellant remarked to her driver: "I don't know what he is going to do, do you?" and the driver made the remark: "What does that fellow intend to do?" After these remarks and after the appellee entered the highway, the appellant's driver applied his brakes and swerved to his left in an attempt to avoid a collision. His efforts came too late. The front end of appellant's truck struck the left side of appellee's car, damaging the radiator, front fender and left side of the door. Appellant's truck, after stricking appellee's sedan, pivoted it abruptly to the right and came to rest approximately 100 feet from the point of impact, off the roadway to the west. Appellee suffered no personal injuries from the impact, but his car had to be towed away. Appellant injured her right hand and the ligaments of her spine. Her truck was driven from the scene of the accident on its own power.

The jury brought in a verdict for the appellee.

This appeal can properly be determined by consideration of the first four assign-

ments of error. Appellant claims in two of her assignments of error that the trial court erred in submitting to the jury for its consideration (1) the issue of negligence on the part of appellant's driver, and (2) the general issue of excessive speed of appellant's vehicle, on the ground that there was insufficient evidence presented from which the jury could find negligence as a result of excessive speed or otherwise. We are convinced that there was no evidence in this case of negligence on the part of appellant's driver unless it be that he violated the posted speed limit of 65 miles per hour, and that such violation was a proximate cause contributing to the collision.

In numerous decisions this court has stated the law to be that a driver may assume that another motorist will proceed in a lawful manner and obey the law of the road, and may act on that assumption. Accordingly, one who is driving on a through or favored highway may assume that a motorist approaching from a side road will stop in order to give him the right-of-way. He has a right to rely on this assumption until such time as it becomes apparent to him, acting as a reasonable person, that the other motorist does not intend to stop or give him the right-of-way. See Davis v. Weber, 93 Ariz. 312, 380 P.2d 608, and cases therein cited.

Here we have a case in which the motorist approaching the highway is proceeding at a slow rate of speed, and under circumstances which indicate that he is capable of stopping his vehicle almost instantly. There was no evidence to indicate he would not stop, at least until the moment he moved onto the paved portion of the highway. It then became a question of fact whether appellant's driver, could have avoided the accident had he been proceeding at a lawful speed, under the circumstances.

The posted speed limit on the highway at the place involved here was 65 miles per hour. There was testimony from which a jury could have found that at the time appellee started his car in motion it was approximately 20 feet from the highway, and that appellant's truck was 900 feet distant. If appellant's truck travelled 900 feet during the few seconds it required appellee to reach the place of collision, it was very likely exceeding the posted speed limit. In such event the driver would, *prima facie,* be guilty of negligence. Deering v. Carter, 92 Ariz. 329, 376 P.2d 857; Mitchell v. Emblade, 81 Ariz. 121, 301 P.2d 1032. Obviously the higher the speed of appellant's truck, the greater the distance between it and appellee's vehicle at the moment appellee entered the highway. In event the jury found a violation of the speed law, it would be for it to determine whether such violation constituted negli-

gence and whether such negligence contributed as a proximate cause of the collision.

A further assignment of error is concerned with the question whether there was sufficient evidence to justify submitting to the jury the issue of appellant's contributory negligence. In Baker v. Maseeh (1919), 20 Ariz. 201, 179 P. 53, this court held that proof of ownership is prima facie evidence that the driver of an automobile is the servant or agent of the owner, and using the vehicle in the owner's business, and that the burden is on the owner to show that such relationship and use did not exist. The appellant presented no such evidence. Assuming, therefore, that there was sufficient evidence of negligence on the part of the driver to warrant submitting that issue to the jury, under the doctrine of imputed negligence set forth in Baker, supra, the owner's contributory negligence became an issue.

Finally, appellant contends that the trial court committed reversable error in instructing the jury on the issue of speed at an intersection because no intersection was involved in the case. After instructing on the basic (reasonable and prudent) speed law, the court gave this instruction:

"Consistent with this rule, the driver of every vehicle shall drive at an appropriate reduced speed when approaching and crossing an intersection * * *".

No intersection existed at or near the place where appellee attempted to cross the highway, unless we assume that the crossover road between the east bound and west bound lanes of the divided highway constituted an intersection. Sec. 28-602(6) A.R.S. provides as follows:

" 'Intersection' means the area embraced within the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict. Where a highway includes two roadways thirty or more feet apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection. In the event the intersecting highway also includes two roadways thirty or more feet apart, then every crossing of two roadways of the highways shall be regarded as a separate intersection."

A crossover road connecting the roadways of a divided highway does not fall within this statutory definition. It could be argued that neither does the statute expressly exclude such a road. However, this court may not add to the statutory definition of "intersection" to include something which obviously has been excluded.

That is a legislative, not a judicial function.

In our view, the crossover road does not itself constitute a "highway", but rather an access lane connecting the two roadways of a highway.

The concept of a single highway consisting of separate divided roadways is further justified by the wording of Sec. 28–731 A.R.S. reading as follows:

> "*When any highway has been divided into two roadways* by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across or within the dividing space, barrier or section, except through an opening in the physical barrier or dividing section or space or at a *crossover* or *intersection* established by public authority". (Emphasis added.)

It is also noted that the words "crossover" and "intersection" are stated in the alternative, thus implying a difference in the meaning intended. We hold therefore, that a crossover road of the type involved here is an integral part of the highway and does not form an intersection at its junction with the lanes of the highway. This conclusion is supported by Sherr v. East (1950), 6 Terry 240, 45 Del. 240, 71 A.2d 262 (involving a crossroad) and Navajo Freight Lines Inc. v. Shafer, (1960), 179 Cal.App.2d 188, 3 Cal.Rptr. 523, (involving an access road).

It is argued that an intersection in fact existed at the scene of the accident because vehicles were customarily driven from Desert Inn directly across the west bound lanes of the highway into the east bound lanes and vice versa, thus establishing a roadway intersecting the west bound lanes. This court held in Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (decision rendered December, 1963, after this appeal was briefed), that the junction of a private road with a highway is not an intersection within the meaning of a statute prescribing the duties of motorists at intersections (Sec. 28–751 A.R.S.). The principle stated in that case applies to a private lane or regularly travelled area extending from the buildings on the Desert Inn property to the highway.

There being no intersection involved in the case, did the giving of the instruction constitute prejudicial error? In Trojanovich, supra, the facts were that an intersection did exist at the junction of 3rd and Ashland Streets, and the appellant in that case actually turned his automobile in that intersection, but instead of turning left into Ashland Street, he turned right into a private driveway. We held the statute relating to turns at intersections did not apply, and that is was therefore prejudicial error to instruct the jury as to the

statutory duties of a motorist in turning at an intersection. Adhering to the principles laid down in that case, we hold that the instruction was erroneous and prejudicial, necessitating the granting of a new trial.

LOCKWOOD, V. C. J., and STRUCK-MEYER, BERNSTEIN, and JENNINGS, JJ., concurring.

NOTE: Chief Justice JESSE A. UDALL, having disqualified himself, the Honorable YALE McFATE, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.