421 P.2d 886

**STATE of Arizona, Appellee,**
v.
**Alonzo Charles SPENCER, Appellant.**
**No. 1679.**

Supreme Court of Arizona.
In Banc.
Dec. 22, 1966.

Alonzo Charles Spencer, in pro. per.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for appellee.

McFARLAND, Justice.

Alonzo Charles Spencer, hereinafter referred to as defendant, was tried and convicted of grand theft of an auto in violation of A.R.S. §§ 13–661, 13–663, as amended in 1963, and 13–671, and sentenced to serve not less than twenty years nor more than thirty years in the Arizona state prison. From this conviction defendant appeals.

Construing the evidence in a light most favorable to the state—State v. Griffin, 99 Ariz. 43, 406 P.2d 397—the following facts led to the arrest, conviction, and sentencing of defendant. On August 7, 1965, defendant appeared at the back door of one of the buildings belonging to Bill Luke Chrysler in downtown Phoenix. He told an employee of Bill Luke Chrysler that he was to report there for a job. The employee told defendant that he would have to wait until a certain party returned from vacation before being hired. The next morning, defendant returned to Bill Luke Chrysler, and entered one of the buildings on the

property, shuffled certain cars around inside, and removed a 1965 Chrysler Newport, Serial No. C–153–317399. While defendant was inside he also removed the license plates and registration card from a 1963 Chrysler in the same building which Eleanor Goebel had left there for repairs. Defendant inadvertently left his cap in one of the cars in the Bill Luke building.

Defendant was stopped near Peoria, Arizona, for improperly changing lanes. The police officer asked defendant for his driver's license, and defendant told him that it was not his car, and that he had been hired by a woman named Mrs. Goebel to drive the car to Kingman; said that his license must be in a bag of his which she had in the car she was driving some distance ahead of him. The officer noticed the car's registration was for a 1963 Chrysler and defendant explained that Mrs. Goebel must have given him the wrong registration. The police officer then called the radio dispatcher on his radio, and was informed that there was no stolen car reported of the description of the one driven by defendant. Then the radio dispatcher called Eleanor Goebel at her Phoenix home, and she denied any knowledge of defendant, or the story which he had told the police. Defendant was then advised of his constitutional rights and taken to the Peoria police station before the local justice of the peace and found guilty of the traffic violation for which he had been cited. He was given a fine, or, in the alternative, a jail sentence. Defendant was unable to pay the fine, and was transferred to the Maricopa County jail on Monday, August 9, 1965. On Tuesday, August 10th, after being fully advised of his constitutional rights, he confessed to theft of the auto, and was bound over for probable cause.

Because defendant was an indigent, Don Francone of the public defender's office was assigned as counsel for his defense. Due to disagreements with defendant, Francone's motion to withdraw as counsel was granted, and defendant decided to conduct his own defense. The trial court made it quite

explicit that if defendant chose to defend his own case rather than request the appointment of another counsel he would be governed by the same rules of procedure as would an attorney. He assented to these conditions. Despite his decision to be his own counsel, the trial court ordered that another member of the public defender's staff be present at the proceedings in the capacity of advisory counsel to assist defendant whenever he felt the need. The trial court further advised defendant that if at any time during the trial defendant wished to be represented by counsel, the court would appoint an attorney to represent him.

Defendant appeals from the conviction and sentence, and, pursuant to a motion by a deputy public defender, we granted a review based upon the record for fundamental error. Defendant later requested, and was granted, the right to file briefs in propria persona. We will therefore consider both the matters set forth in defendant's brief, and examine the record for fundamental error.

■ Defendant first contends that he was denied a fair and impartial trial because the trial court was guilty of bias and prejudice. Defendant only cites one portion of the record which even merits a discussion of this contention. Before pronouncing sentence, the trial court informed defendant that because of his lengthy record of criminal involvement he was not going to give defendant a light sentence. Defendant maintains that there were certain errors in his F.B.I. "rap" sheet which the trial court had relied on in pronouncing sentence. It suffices to say that this contention does not go to the proceedings which resulted in the guilty verdict but only to the sentence. Assuming, as defendant contends, there were one or two errors in his "rap" sheet, there are many other criminal involvements which the court could properly take into consideration in exercising its discretion under A.R.S. § 13–1650 in imposing the sentence.

In further answer to this contention concerning the bias and prejudice of the trial court, the record is abundant with examples of time-consuming efforts on the part of the court and advisory counsel in regard to procedural problems of examination and cross-examination, and leniency. For example, the court requested the deputy county attorney not to make any objections unless he felt that it was very important.

■ Defendant contends that he was denied the right to counsel, and because of this he was forced to represent himself. The record does not substantiate this charge. Defendant insisted upon defending himself, and the court then ordered that a member of the public defender's staff sit in on all proceedings as advisory counsel. The record shows that, in the light of defendant's decision to defend himself, the trial court and the advisory counsel did all that was possible, and defendant never accepted the offer of the court to furnish him counsel. Under these facts we find no merit in his contention that he was deprived of counsel. He clearly waived the right to counsel. State v. Anderson, 96 Ariz. 123, 392 P.2d 784.

■ Defendant contends that he was deprived of the right to confront and cross-examine certain witnesses. He claims that these witnesses would have been very helpful to his case, and, even though he was expressly informed that he had a right to subpoena witnesses in his behalf, there is nothing in the record to show that defendant even attempted to subpoena anyone. The substance of his claim is that these two witnesses were subpoenaed by the prosecution. He was aware of this fact, and relied on the prosecution's subpoena to have the witnesses appear. One of the witnesses did not appear because he was on vacation, and the appearance of the other, Eleanor Goebel, was not required, for she was out of state at the time of the trial. In State v. Mace, 86 Ariz. 85, 340 P.2d 994, we said:

"Appellant complains of the fact that the trial court proceeded with the trial in the absence of one Gordon Noe, the complain-

ing witness; and further, did not grant appellant a continuance to secure his presence. Appellant argues (but cites no authority to the effect) that proceeding with the trial in the absence of the complaining witness constitutes a violation of Art. II, § 24, Constitution of Arizona, A.R.S. We hold that it does not. The right of the accused in a criminal prosecution 'to meet the witnesses against him face to face' is the right to face those persons whose testimony is offered at trial. People v. Ferguson, 410 Ill. 87, 101 N.E.2d 522, certiorari denied 343 U.S. 910, 72 S.Ct. 643, 96 L.Ed. 1327. Since Gordon Noe did not appear nor testify at the trial, appellant's rights under the cited article of the constitution were not infringed." 86 Ariz. at 86, 340 P.2d at 995.

There is less merit in defendant's contention in the instant case than there was in State v. Mace, supra. Neither of the parties which defendant contends he was denied the right to cross-examine testified at his trial, so there was no deprival of the right to confront or cross-examine. State v. Boodry, 96 Ariz. 259, 394 P.2d 196, cert. denied in 379 U.S. 949, 85 S.Ct. 448, 13 L.Ed.2d 546. Defendant was expressly informed that he had subpoena powers, but chose not to use them. We find no merit in defendant's contentions in regard to witnesses.

■ Defendant cites several authorities concerning the crime of perjury, and then states that the trial court erred in not instructing the jury to disregard certain testimony of one of the state's witnesses because he had given perjured testimony. The question of whether the witness gave perjured testimony was for the jury's determination. The court properly denied the instruction, and properly instructed the jury as to its duty in judging the credibility of the witnesses, and this is the most that it is allowed to do in the State of Arizona. See Alvarado v. State of Arizona, 63 Ariz. 511, 164 P.2d 460.

■ Defendant contends an article in regard to his confession in the local papers deprived him of a fair and impartial trial. There is absolutely nothing in the entire record which lends support to this claim.

■ Defendant states that it was impossible for him to receive a fair and impartial trial because the deputy county attorney which prosecuted this action was guilty of bias and prejudice toward defendant. The record does not reveal any improper conduct by the deputy county attorney. This contention is without merit.

■ In accord with our original order to grant review on the record for fundamental error, we have read the entire record in search for any such error. Fundamental error was defined in State v. Pulliam, 87 Ariz. 216, 349 P.2d 781, as error which goes to the foundation of the case, or which takes from defendant a right essential to his defense. This court finds no error in the record before us, with the exception of the question of the voluntariness of the confession.

■ Defendant contends that his confession was not voluntary. The court, after a hearing in regard to the voluntariness of the confessions, stated:

"Well, Mr. Spencer, there is a conflict between your testimony in here and Mr. Kavanaugh's. The Court feels that is a question the jury must decide. And under the circumstances and the testimony in explanation given here in Chambers out of the presence of the jury, the Court will rule that this is admissible, and it is up to the jury to determine if it was given and whether it was given voluntarily and if you understood the nature and consequences of such a statement before giving it to them, having had explained to you the constitutional rights that are yours, the officer having testified that he made that explanation to you at least three times."

In State v. Dodd, 101 Ariz. 234, 418 P.2d 571, this court said:

" * * * In State v. Owen, 96 Ariz. 274, 394 P.2d 206, this court, in following the procedures outlined in Jackson v. Denno,

378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, held that before a confession may be admitted into evidence there has to be a separate hearing before a judge who gives a definite ruling that the confession in question was voluntary. The ruling in the instant case does not meet the standards established by this court as to definiteness. The court's ruling merely stated that it was found *prima facie* that the accused had been warned of his *self-incrimination privilege and his right to counsel.* He does not find that the confession was voluntary. In State v. Griffin, 99 Ariz. 43, 406 P.2d 397, this court held that a ruling that there was a prima facie showing of voluntariness was an insufficient ruling. The law requires a definite determination of voluntariness, and for the reasons above stated, no reasonable construction of the judge's ruling will meet this standard." 101 Ariz. at 238, 418 P.2d at 575.

The ruling of the trial court in the instant case does not meet the standards of a "definite determination" which are required before such admissions can be placed in evidence before the jury. For this reason, the instant case shall be remanded for a voluntariness hearing in accord with the procedures set out in State v. Dodd, supra; State v. Tannahill, 100 Ariz. 59, 411 P.2d 166; and State v. Simoneau, 98 Ariz. 2, 401 P.2d 404. If the lower court finds defendant's confession to be voluntary and so rules, it will cause a certified copy of its minute entry to be submitted to the clerk of this court, and if no objection to the ruling is presented within fifteen days of the Supreme Court Clerk's receipt of such minute entry, an order will be entered affirming the conviction.

If the court below finds that the confession was involuntary, it is directed to enter an order granting defendant a new trial.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.