470 P.2d 500

**Joaquin RUIZ, by his Guardian ad litem, Carlos R. Estrada, Appellant,**

v.

**Leo Edward FAULKNER and Mary Faulkner, his wife, Appellees.**

**No. I CA–CIV 857.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 11, 1970.

Rehearing Denied July 14, 1970.
Review Denied Oct. 27, 1970.

Estrada, Estrada & Ross, by Carlos R. Estrada and Lionel Estrada, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph E. Hunsaker, Phoenix, for appellees.

EUBANK, Presiding Judge.

Involved in this appeal is a personal injury to an eight and one-half year old child, the plaintiff and appellant herein. The child ran into a road while chasing a ball and was hit by a 1955 Pontiac 4-door sedan owned and driven by the defendant and appellee. A negligence action was filed by the plaintiff and the defendant answered denying liability and raising contributory negligence as an affirmative defense. Following a trial by jury, a verdict was returned in defendant's favor and plaintiff appeals from the entry of the resulting judgment.

The accident occurred at approximately 4 o'clock in the afternoon on April 3, 1966, in the vicinity of 2102 South Third Avenue, on the Maricopa freeway access road within the city of Phoenix. Visibility was good and the asphalt road was dry. The

defendant, accompanied by his family, was driving to a picnic at South Mountain Park, using the Maricopa freeway traveling east. He left the freeway at the Seventh Avenue off-ramp, and, at the time of the accident, was proceeding east along the one-way access road which parallels the freeway. He described the accident event in these words:

\* \* \* \* \* \*

"[Defendant] As we were approaching the site of the accident we were traveling along the road at approximately forty miles an hour and I saw a basketball or a large ball roll across the street, and I saw a gentleman standing at the curb, and it appeared that he was going to take steps to retrieve or chase the ball. He appeared to be going in that direction, and at that time he saw me and he stepped, as best I can remember, he took a step backward or maintained his position. And upon my seeing him at the curb, I released my foot from the accelerator and prepared to brake, start braking. When he maintained his position or stepped back, I did not put the brakes on. I directed my foot back toward the accelerator, and about the same time, you might say, well, just a fraction of a second or simultaneous, the boy ran out in front of me and I put my foot back on the brake, stamped the brakes on.

Q At any time during the course of this, or these events, did you toot your horn?

A No, sir, I didn't have time."

\* \* \* \* \* \*

The defendant further testified that he did not see the plaintiff running after the ball due to a camper-pickup truck parked by the curb that obscured his view. The gentleman that defendant saw standing at the curb testified:

\* \* \* \* \* \*

Q Tell us what you saw.

Q [sic] Well, I was standing in front of the truck here looking inside the mo-

tor when I heard this ball that went behind me, and I looked around and I seen the ball go out in the street, go across the street. So I looked, I turned around and I walked up the curb, and I looked this way, and I see him coming, seen his car coming, so I wait there to let him pass, and crossed the street and get the ball. The time I was waiting I heard somebody coming, running toward me. I reached out and said this car is coming too fast, reached out, but I couldn't feel anything. Then I heard brakes and I turned my face.

Q You didn't see the impact?

A No, sir, I turned my face because I realized it was too late for him to stop.

Q You heard the sound?

A Yes, I heard the brakes and I turned my face when he hit him."

\* \* \* \* \* \*

The plaintiff was injured and hospitalized. Additional facts will be discussed hereafter in relation to the specific questions raised on appeal.

The plaintiff first contends that the trial court committed "fundamental and prejudicial error" by instructing the jury that they might find that the plaintiff was contributorily negligent and therefore could not recover from the defendant.

■ The record shows that the trial judge refused defendant's requested instruction which dealt with contributory negligence, stating that he would give the MARJI[1] Instruction on contributory negligence instead. Plaintiff did not object to the giving of the MARJI Instruction. Rule 51(a), Rules of Civil Procedure, 16 A.R.S., forbids any party from raising as error the giving or failure to give an instruction unless he objects to it before the jury retires to its deliberations. The failure to object precludes our consideration of the matter unless, as plaintiff contends, the giving of the MARJI Instruction was "fundamental and prejudicial error." Fun-

---

1. Maricopa Recommended Jury Instructions, prepared by a Special Committee on

Uniform Instructions Maricopa County Superior Court Judges.

damental error has been defined as error that goes to the foundation of the case, or which takes from a party a right essential to his case. State v. Spencer, 101 Ariz. 529, 421 P.2d 886 (1966). It is our opinion that no such error is present with regard to this instruction.

■ Our Supreme Court has said that a child of six or seven years of age may be found to be contributorily negligent by a trier of fact if the issue is properly plead, as it was in this case. However the Supreme Court requires that a jury then must consider the individual age, intelligence and experience of the child in determining the issue of contributory negligence. Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962); Cf. Beliak v. Plants, 84 Ariz. 211, 326 P.2d 36 (1958); See Restatement (Second) Torts, § 283(A) (1963–1964). The trial court instructed the jury regarding a child's standard of care as follows:

"A child is not held to the same standard of care as an adult. A child is negligent if he fails to use that degree of care which is ordinarily exercised by children of the same age, intelligence, knowledge, and experience, under the same circumstances then existing.

The standard of care of a child just stated applies even though the child may have violated a statute or ordinance.

Ordinary, [sic] it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they are often thoughtless and impulsive imposes a duty to exercise a proportionate vigilence [sic] and caution on those dealing with

children, and from whose conduct injury to a child might result."

■ It is our opinion that the MARJI Instruction (No. 10 alternate) on contributory negligence [2] together with the above instructions on the standard of care owed to a child satisfies the requirements of Gilbert and Beliak, supra.

■ Plaintiff next alleges that it is defendant's burden to prove plaintiff's pre-accident capacity and understanding before being entitled to an instruction on contributory negligence, citing Gilbert v. Quinet, supra, as his authority. In Gilbert the Supreme Court reversed the defendant's verdict as prejudicial error partly on the basis that the record was void of any evidence showing the plaintiff-child's pre-accident capacity and understanding. The court said "* * * [the record] fails to reveal anything indicating his [the child's] experience and judgment in relation to traffic on the streets." (91 Ariz. at page 33, 369 P.2d at page 270). The clear implication of Gilbert, as plaintiff correctly contends, is that this burden of proof is upon the defendant in this case to prove the pre-accident capacity of the plaintiff as a part of his affirmative defense of contributory negligence. The record shows that the plaintiff was placed on the stand and personally testified; it further shows that his deposition, which was taken following the accident, was read to the jury; and it also shows that his uncle, who was his guardian, testified as to his personal observations concerning the child's capacity and understanding as did other witnesses. It is our opinion that there was sufficient evidence concerning age, capacity and experience of the plaintiff to make out an issue of contributory negligence for the jury and to support their verdict.

Plaintiff next alleges that the court in effect instructed the jury that the plaintiff would be negligent per se if he had violat-

2. "If the conduct of both the plaintiff and the defendant was negligent, and if the negligent conduct of each considered separately was a proximate cause of the accident, it is immaterial who was more negligent. In such a case the plaintiff should not recover."

ed a statute. Prior to instructing the jury on a child's standard of care, set out above, the trial court read two statutes, A. R.S. § 28-793, subsec. A [Pedestrian out of a crosswalk must yield the right of way], and § 28-701, subsec. A [Driver must drive at a reasonable and prudent speed], and then said:

> "Should you find that defendant violated any of the above laws, then the defendant would be negligent as a matter of law, and you should not debate that issue any further, but should then consider whether the negligence was a proximate cause of the plaintiff's injury.

> "Should you find that the plaintiff violated any of the above laws, then you may consider that to be negligence on the part of the plaintiff."

The court then instructed on the standard of care relating to children, supra.

■ The instruction that the jury "may consider" plaintiff to be negligent, when read together with the standard of care instruction, is not a negligence per se instruction as is the preceding instruction that the defendant would be negligent as a matter of law. Furthermore, in this case defendant pled contributory negligence as an affirmative defense as required by Gilbert and this issue was properly before the jury. It is our opinion that the instruction, when read with the other instructions given the jury by the trial court, and in particular with the child's standard of care instructions, constitutes a correct statement of the law as applied to the evidence in this case. We do not deem Daun v. Truax, 56 Cal.2d 647, 16 Cal.Rptr. 351, 365 P.2d 407 (1961), cited by plaintiff, applicable to this case for the reason that the plaintiff in the case at bar was judged by the standard of care due a child and not by an adult's standard as occurred in Daun. We do agree with Daun, however, that a child of plaintiff's age cannot be negligent per se without doing violence to the Supreme Court's holdings in Gilbert and Beliak.

Next the plaintiff claims that the trial court erred in not permitting the plaintiff's uncle to answer the question: "Where is his [plaintiff's] mother and father?" Defendant's objection to this question was on the basis of its materiality. Plaintiff's offer of proof was that the uncle would show that the father abandoned the mother; that the mother subsequently delivered the child to the uncle; that plaintiff was aware that his uncle, his uncle's mother, the plaintiff's grandmother, with whom the uncle and plaintiff lived, were not his parents, and that his mother had left him in their care and custody and that he has not heard from his parents since.

■ Plaintiff argues that such testimony would have gone directly to the issue of the child's pre-accident capacity: namely, the plaintiff's intelligence, knowledge and experience, and that the failure to permit the testimony, as outlined in the offer of proof in an action where the contributory negligence of the plaintiff is in issue, constitutes prejudicial and fundamental error. Plaintiff's counsel claimed that plaintiff was retarded and consequently did not satisfy the standard of care. However, the offer did not indicate any facts which would tend to prove that the plaintiff-child was in fact retarded or that his understanding, intelligence, knowledge and experience were in fact impaired to the point that the standard of care was affected. Evidence presented on this point would have certainly been material and the rejection of such evidence, with an appropriate offer of proof, would have required our reversal. Such is not the case here, however. While there is other testimony in the record referring to the plaintiff as retarded and that he was attending a special school for retarded children in California, there is no evidence that his understanding, intelligence, knowledge or experience was actually impaired. Plaintiff's uncle testified he had enrolled the child in that school because of the boy's personality problems: he was always picking fights. Certainly the matters referred to in the of-

fer of proof would not have proven mental retardation. Under these circumstances we do not consider the trial court's ruling on the offer of proof error.

 The plaintiff next alleges that the trial court erred in giving defendant's Instruction No. 29, as modified. The instruction complained of read as follows:

"Every person who is himself exercising ordinary care on the highway has the right to assume that every other person will perform his duty to exercise reasonable care and will obey the laws. He has the right to rely and act on that assumption. However, a driver or a pedestrian, both have the obligation to make such observation as will enable them to see what a person in the exercise of ordinary care could and should have seen under the circumstance then and there existing."

The first two sentences of this instruction may well have been taken from Justice Struckmeyer's dissent in Esquivel v. Nancarrow, 104 Ariz. 209, 216, 450 P.2d 399, 406 (1969), where he said:

"In Arizona the driver of a motor vehicle does not have the duty to anticipate the presence of others unlawfully using the highway except under special circumstances where a duty to anticipate might be required, [citations omitted], and a motorist is entitled to assume that others using the highway will obey traffic regulations. [citations omitted]"

We believe this to be a correct statement of the law. While the Esquivel case involved a three-and-a-half-year-old child, who was incapable of contributory negligence under Arizona law, the case at bar does not contain any such disability; therefore, in our opinion the instruction was proper.

Plaintiff complains that the court erred in instructing the jury that,

"The driver is not required to anticipate the sudden appearance of children in the driver's pathway under ordinary circumstances."

 In support of the instruction the defendant cites Womack v. Banner Bakery, Inc., 80 Ariz. 353, 356, 297 P.2d 936, 938 (1956), where the Supreme Court stated:

"Appellees rely on our rule in the case of Schmerfeld v. Hendry, 74 Ariz. 159, 245 P.2d 420, wherein we approved an instruction that a driver is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances. The facts in that case called for the application of the 'sudden appearance' rule as applying to a child darting into the street. That rule is not applicable when the child is seen in a place of safety under such conditions that a reasonable person should expect his movement into the danger zone."

The record shows a conflict in the evidence regarding the observed presence of children. The defendant testified that he did not see children and the plaintiff's witnesses testified that children were playing in the area adjoining the accident site. Under the facts in this case, the giving of the sudden appearance instruction, together with the other instructions, was proper.

 The final error claimed by plaintiff is that the trial court erred in denying his motion for a directed verdict as to the issue of the defendant's negligence (speeding). A motion based on Rule 50(a), Rules of Civil Procedure, 16 A.R.S., permits a party to move for a directed verdict at the close of the evidence offered by his opponent without waiver of his right to receive a determination of the fact issues by the jury. Its summary nature requires the trial court to consider all competent evidence and the inferences drawn therefrom to be interpreted most strongly against the moving party to determine whether or not the opponent has made out a prima facie case. Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967); Joseph v. Tibsherany, 88 Ariz. 205, 354 P.2d 254 (1960). See also Continental Ore. Co. v. Union Carbide & Carbon Corp. (1962), 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777, 782.

**358**

Under this standard, a review of the record shows that the trial court correctly denied the motion. Plaintiff contended that the defendant was speeding at the moment of the accident. The record shows that the frontage road was posted for a speed limit of 40 miles per hour. The defendant testified at the trial that he was traveling 40 miles per hour. Immediately following the accident he reported to the investigating officer that he was traveling 40 miles per hour and then several days later he made a statement that he might have been going 45 to 50 miles per hour. He explained the inconsistent statement on cross-examination this way:

"The only explanation I can give is that farther back toward 7th Avenue I might have been going forty-five and as I approached nearer the scene, or as this accident took place, then I slowed down."

An expert witness on traffic accident investigations testified on cross-examination, on the basis of the skidmarks, that defendant's vehicle was traveling a minimum probable speed of between 30 and 31 miles per hour when the defendant perceived the situation and applied the brakes.

Turning to the law, the posting of a speed limit zone as authorized by A.R.S. §§ 28–701, 28–702 and 28–703, establishes a prima facie safe speed. A person driving within that established speed limit has a right to rely on the reasonableness of the established speed zone. Mitchell v. Emblade, 80 Ariz. 398, 298 P.2d 1034 (1956), corrected in 81 Ariz. 121, 301 P.2d 1032 (1956). On the other hand, a person driving in excess of the established speed limit on Arizona roads is not negligent per se but such fact does constitute prima facie evidence that such excess speed is not reasonable and prudent. At page 123 in Mitchell v. Emblade (81 Ariz.), 301 P.2d at page 1033, supra, the Supreme Court said:

"One exceeding the prescribed speed must be given the opportunity to rebut such prima facie evidence and show if he can that under the particular circumstances he was not negligent. If such evidence be submitted it becomes a *jury question* as to whether he was driving at a prudent and lawful speed (numerous citations omitted)." (Emphasis added)

See also: Marks v. Goodding, 96 Ariz. 253, 256, 394 P.2d 192 (1964); Deering v. Carter, 92 Ariz. 329, 332, 376 P.2d 857 (1962).

It is our opinion that the issue of speed was properly presented to the jury and the motion properly denied.

Judgment affirmed.

HAIRE and JACOBSON, JJ., concur.