339 P.2d 679

Ralph P. WOLF d/b/a Zia Oil Company, Plaintiff-Appellee,

v.

E. H. PERRY and Leroy Lowry, d/b/a Perry and Lowry Oil Company, Max Konz and Frank Maurale, Defendants-Appellants.

No. 6475.

Supreme Court of New Mexico.

May 18, 1959.

458

Phillips, Dolan & Clear, Albuquerque, for appellants.

Schall & Sceresse, Albuquerque, for appellee.

LUJAN, Chief Justice.

This is a tort action for inducing a breach of contract.

In the fall of 1955, plaintiff-appellee, Ralph Wolf, was in the business of distributing the petroleum products of Union Oil Company. At that time, one Max Konz, the owner of certain real property in Moriarty, New Mexico, on which gasoline pumps and other equipment were located, entered into an exclusive gasoline sales contract of five years' duration with the plaintiff. The contract provided that the plaintiff had the right to cancel the contract on ten-day notice. It further provided that should Konz dispose of the business "he shall advise the purchaser of this contract, and not sell said business until and

unless the purchaser agrees to be bound by the provisions thereof for the period until this contract shall terminate."

Defendants-appellants, Perry and Lowry, were at all material times distributors of Phillips Petroleum Company products.

At the time Konz entered into the contract with the plaintiff, one Frank Maurale was operating a service station in Albuquerque and the plaintiff was selling him Union Oil Company products.

In June, 1956, Maurale negotiated with Konz for the purchase of the latter's Moriarty property, and on June 25, 1956, he signed a binder for such purchase. Title was transferred to Maurale by warranty deed on July 23, 1956.

The testimony is conflicting as to whether Maurale knew of the contract between Konz and the plaintiff prior to signing the binder. He did know of the contract prior to the actual transfer of the property, having been advised by his attorney that it was not binding on him.

Plaintiff and his son, Jerry Wolf, testified that Maurale stated he would abide by the contract even though "he didn't think it was any good." Maurale flatly denied this and testified that he only went through with the purchase after being advised by his attorney that he was not bound on the Konz-Wolf contract. Witness Underwood, the real estate agent who negotiated the sale of the Konz property to Maurale, testified that

Maurale told him he would not purchase the property if there was a contract for the purchase of gasoline from the plaintiff which would be binding on him.

At the time Maurale purchased the Moriarty property from Konz, no gasoline had been sold on the premises for some four months and the large Union Oil Company sign was down. Konz testified that he sold the property to Maurale as real estate and not as a going business. He further testified that he felt he had never been released from his contract with the plaintiff; that as early as December, 1955, he had called the office of defendants Perry and Lowry with a view toward purchasing Phillips Petroleum Company products; that the defendants had never attempted to persuade him to discontinue purchasing Union Oil Company products.

Defendant Perry testified that when he received word of the call from Konz, he visited him, and upon being advised by Konz that the contract with the plaintiff was cancellable on thirty-day notice, he offered to sell him gasoline on the open market. However, no arrangement or contract was entered into between Konz and the defendants.

Sometime prior to the closing of the deal for the Moriarty property, Perry visited Maurale once at his Albuquerque station and offered to sell him gasoline for the Moriarty station "on the open market."

In this connection, Perry testified as follows:

"(Maurale) told me he wasn't going to handle Union products, and in fact, he wouldn't have bought the station under any circumstances if he had to deal with Zia Oil Company. He was going to make different arrangements. He and Mrs. Maurale came to our office on two different occasions. She also made the same statement. They wouldn't handle Union Oil Company's products under any circumstances. They also made the statement that there was no contract and they were at liberty to buy from whomever they pleased."

There was also a conflict in the testimony as to whether or not Perry and Lowry had any knowledge of the existence of a contract between Maurale and the plaintiff. Plaintiff testified that upon being told by his son that Maurale was having the Moriarty station painted Phillips Petroleum Company colors, he then called Maurale who confirmed this fact. Plaintiff testified that he then called Perry and "talked to him and tried to get them to get in touch with the man doing the painting and ask him to quit. I said we had a contract with the business, we were in for considerable amounts of money, and I asked him if he wouldn't honor the contract. He told me that Mr. Maurale told

him he didn't have a contract and he passed it off very lightly."

The complaint named Max Konz, Frank Maurale and Perry and Lowry as defendants. It alleged that Konz breached a contract with the plaintiff; that Maurale breached a contract with the plaintiff; and that Perry and Lowry induced Maurale's breach.

After Konz, Maurale, Perry and Lowry filed answers to the complaint, plaintiff moved to drop Konz and Maurale from the case and file an amended complaint. The motion was granted and the amended complaint named Perry and Lowry as the sole defendants. Maurale moved to strike the order dropping him on the grounds that the amended complaint alleged facts which, if proved, might establish his liability to the plaintiff. Further amendment of the pleadings was permitted, and a second amended complaint was filed naming Perry and Lowry and Maurale as defendants. The second amended complaint alleged a breach of contract by Maurale which was "tortiously induced" by defendants Perry and Lowry. In the course of the trial, the case against Maurale was dismissed.

The trial court found that the contract between the plaintiff and Konz was of "five years duration. That Frank Maurale was substituted for Konz in the aforesaid contract but that Maurale was dismissed from this lawsuit but nevertheless there was an

interference with the contract on the part of the defendants herein."

The court concluded "defendants, Perry and Lowry, tortiously interfered with the contract to the damage of the plaintiff."

From a judgment awarding $500 damages to the plaintiff, defendants appeal. Plaintiff cross-appeals on the question of damages.

For the moment we will assume that all of the requisite elements of a novation are present and that by oral agreement Maurale was substituted for Konz on the gasoline sale contract with the plaintiff.

■■ The general rule is that one who, without justification or privilege to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby. See Annotation in 26 A.L.R.2d 1227. The prevailing doctrine is that liability for inducing a breach of contract attaches even if the contract, though valid, is unenforceable. See e. g., Aalfo Co. v. Kinney, 105 N.J.L. 345, 144 A. 715; Ringler v. Ruby, 117 Or. 455, 244 P. 509, 46 A.L.R. 245; Prosser on Torts, p. 980 (1941).

■■. One cannot be held liable for the tort of inducing a breach of contract unless he has knowledge of the contract; without such knowledge the requisite intention is absent. Assuming that the defendants in this case had knowledge of a contract between Maurale and the plaintiff (the trial court made no finding of fact on this point), this alone is not sufficient to impose liability for inducing a breach of contract. Contracting with a party with knowledge of a prior inconsistent contract between that party and another is not according to the better view, the equivalent of inducement or persuasion. Sweeney v. Smith, C.C., 167 F. 385, affirmed 3 Cir., 171 F. 645; Minnesota Wheat Growers' Co-op. Marketing Ass'n v. Radke, 163 Minn. 403, 204 N.W. 314; Lamport v. 4175 Broadway, D.C., 6 F.Supp. 923; Horth v. American Aggregates Corp., Ohio App., 35 N.E.2d 592.

Comment (i), Restatement, Torts § 766, states as follows:

"One does not induce another to commit a breach of contract with a third person * * * when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person."

A necessary element of the tort of inducing a breach of contract is a showing that the defendant played an active and substantial part in causing the plaintiff to lose the benefits of his contract. There must be some voluntary conduct on the part of the defendant, some overt act which influences the promisor to breach his contract. Royalty Realty Company v. Levin, 244 Minn. 288,

462

69 N.W.2d 667; Imperial Ice Company v. Rossier, 18 Cal.2d 33, 36, 112 P.2d 631; Kock v. Burgess, 176 Iowa 493, 156 N.W. 174, 158 N.W. 534. And see cases cited in 26 A.L.R.2d 1227, 1249.

The court stated this principle in the following manner in Augustine v. Trucco, 124 Cal.App.2d 229, 268 P.2d 780, 791:

"A plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege (and prove) that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof. Unless the act complained of was the proximate cause of the injury there is no liablity. * * *"

To the same effect is the following statement by the court in Snowden v. Sorensen, 246 Minn. 526, 75 N.W.2d 795, 799, 800:

"But even assuming that defendants * * * were aware of the prior contract, there is still no evidence to support a finding that any acts of either of them brought about its breach by Sorensen. The mere fact that they knew of the first contract would be no bar to either of them entering into a second contract with Sorensen, providing they did nothing to induce Sorensen to breach the prior contract. * * *"

■ The above-quoted statements seem very applicable in this case. There is no substantial evidence in this record to support a finding either that the defendants actively sought to procure a breach of contract or that any conduct on their part was a substantial factor in Maurale's failure to perform the contractual obligations. And indeed, the trial court made no such findings.

The plaintiff and his son, Jerry Wolf, both testified that Morale had stated he would abide by the terms of the contract though he did not feel he was bound to do so. Even if this testimony is completely true, and Maurale emphatically denies that it is, it does not establish, either directly or by inference, any persuasion or inducement to breach on the part of the defendants.

Plaintiff relies on the fact that defendant Perry called on Maurale on one occasion *prior* to his purchase of the Moriarty property and "solicited his business." Even if such solicitation took place, it does not establish an inducement to breach any contract for the reason that there is no proof whatever that the novated contract was yet in existence.

Plaintiff states as follows in his brief: "This call was made on Maurale at his station on Mountain Road and *before* the deal on the Moriarty property was closed." (Emphasis added.) Yet nowhere in the record is it established whether this "solicita-

tion" visit occurred before or after Maurale had supposedly agreed to be substituted for Konz on the contract with the plaintiff.

This is not an action for interference with a prospective advantage. Rather it is an action against the defendants for inducing Maurale to breach the novated contract. Obviously then, the only acts which could possibly constitute inducements to breach the contract would be those which occurred after the novated contract came into existence.

The only other act of inducement mentioned by the plaintiff is that defendants took down certain Union signs and began to paint the Moriarty station with Phillips Petroleum Company colors. When we consider that this was not a company station, or even a leased station, but rather that the real property, the buildings and the equipment were wholly owned by Maurale, it becomes obvious that this action was not an inducement to Maurale to breach his contract to sell Union Oil Company products only. Certainly he would not have permitted his privately owned property to be painted with Phillips colors unless he had *already* decided that he was going to sell Phillips products rather than Union products.

The following statement by the court in Emery v. A. & B. Commercial Finishing Co., Okl., 315 P.2d 950, 952, is quite adequate to sum up our position:

" * * * after a thorough examination of the evidence, we think it insufficient to establish that any wrongful act of persuasion, or inducement, on the part of the defendant was the proximate cause of plaintiff's claimed injury."

In view of what we have said, it becomes unnecessary to consider other claimed error or to consider the question of damages raised in the cross-appeal.

The judgment is reversed and the cause remanded to the trial court with a direction to dismiss the complaint, with prejudice.

It is so ordered.

McGHEE, COMPTON and CARMODY, JJ., concur.