492 P.2d 429

**D & S FARMS**, an Arizona corporation, Appellant,

v.

**PRODUCERS COTTON OIL COMPANY**, a California corporation, Appellee.

No. 2 CA–CIV 1033.

Court of Appeals of Arizona, Division 2.

Jan. 13, 1972.

Edgar Hash, Phoenix, for appellant.

Rawlins, Ellis, Burrus & Kiewit by William D. Baker, Michael S. Milroy and Michael V. Mulchay, Phoenix, for appellee.

HOWARD, Judge.

The controversy in this case centers around a claim for wrongful interference with a contractual relationship. The appellant, D & S Farms, was the defendant and counterclaimant in the trial court and shall hereinafter be referred to as D & S. The appellee, Producers Cotton Oil Company, was the plaintiff and shall hereinafter be referred to as Producers. Stanley Snitzer and Doris Snitzer were also defendants in the trial court and they shall be hereinafter referred to as the Snitzers.

The Snitzers owned a farm located in Pinal County, Arizona. In order to finance their farm operations the Snitzers, in 1962, borrowed money from Producers. The amount borrowed was evidenced by a promissory note and secured by a realty and chattel mortgage on the premises. In 1963 and 1964, additional sums were borrowed by the Snitzers from Producers which sums were also evidenced by promissory notes and secured by crop and chattel mortgages. Finally in 1968, after the Snitzers were in default on the notes and mortgages, a "Revision, Extension, Assignment and Release Agreement and Security Agreement", (hereinafter referred to as the "Assignment") was entered into between the Snitzers and Producers. This Agreement provided, *inter alia,* that in addition to the lien to which Producers was entitled by virtue of its already existing mortgages, it was to have, as security, an absolute assignment as to rents, issues and profits from the lease of the farm. Under this Agreement Producers was authorized to collect the monies due the Snitzers and apply them to the indebtedness due Producers. Snitzers further promised that they would continue to pay the current payments on the notes.

When the Snitzers failed to make payments on the notes Producers filed this foreclosure action. In conjunction with the filing of the action, Producers also petitioned for the appointment of a receiver pursuant to the terms contained in all of the mortgages previously mentioned.

The Snitzers resisted the appointment of a receiver on the ground that the value of the real estate was adequate security for the various promissory notes. A hearing was held on the question of the appointment of a receiver. After hearing testimony, the trial court denied the petition for the receiver.

At the hearing on the appointment of the receiver it was brought out in the testimony that the Snitzers owned 80% of D & S; that D & S was growing alfalfa on the premises in question; that Snitzers and D & S had an agreement whereby D & S was to get "fifty percent of the value of the crop" and Snitzers were to get the "other fifty percent"; and that D & S was contemplating entering into a contract for the sale of the alfalfa. At the time of the hearing it was not known exactly with whom the contract would finally be made, but the name of Hughes & Ganz Cattle Company, Inc. was mentioned as one of the likely parties. Approximately a week later Producers sent the following letter to Hughes & Ganz:

\*      \*      \*      \*      \*      \*

"Under the provisions of a certain Revision, Extension, Assignment and Release Agreement executed by *Stanley Snitzer* and *Doris E. Snitzer,* his wife, dated December 30, 1968 and recorded in Pinal County December 30, 1968 in Docket 556, page 403, all rents, proceeds and issues due Stanley and Doris Snitzer (arising out of the Snitzer Ranch located near Coolidge, Arizona) were assigned to Producers Cotton Oil Company. It is therefore, requested that any sums you now owe or sums due from you to Snitzer in the future be made payable to Producers Cotton Oil Company for the account of Stanley Snitzer."

Three months went by after this letter was sent before Hughes & Ganz decided to make its checks for the alfalfa jointly payable to Producers and D & S. During the

three month period Hughes & Ganz made its checks for alfalfa payable to D & S only.

D & S refused to accept the joint payee checks and upon the refusal of Hughes & Ganz to make them payable only to D & S, the court was petitioned to enter an order requiring payment only to D & S. This petition was granted.

On February 1, 1971, a Motion for Summary Judgment and Motion to Appoint a Receiver was made by Producers. The motions were taken under advisement and on February 5, 1971, the Motion for Summary Judgment was granted on the issue of the right to foreclose with only the amount due under the mortgages and reasonable attorney fees as issues to be tried. The court further ordered that the issue on the counterclaim being purely a question of law, that it would be argued and submitted at the time of trial.

After the trial on February 16, 1971, a judgment was entered in favor of Producers on all issues, including the counterclaim and on March 1, 1971, a receiver was appointed.

D & S appeals from the summary judgment granting Producers judgment in its favor and against D & S on the counterclaim.

It is D & S' claim on appeal that the trial court erred in granting summary judgment against it since the letter by Producers to Hughes & Ganz was without legal justification.

D & S, relying on the case of Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224 (1940), contends that Producers acted without legal justification. It is the position of D & S that (1) Producers, as a chattel mortgagee, had no right to immediate possession of any sums of money and (2) the failure of the court to initially appoint a receiver barred Producers from pursuing any sums due from the alfalfa contract.

■■ As to the first contention we believe that D & S has failed to distinguish between the chattel mortgages and the later Assignment. While it is true that title to mortgaged property remains in the mort-

gagor and that the lien of the mortgagee does not entitle it to possession of the property unless authorized by the express terms of the mortgage, Dart v. Western Savings & Loan Ass'n, 103 Ariz. 170, 438 P.2d 407 (1968), Producers had, by virtue of the Assignment, an interest which did entitle it to possession of income from the property *superior* to that of Snitzer. Hence, in the absence of some other reason, Producers had the right to any sums derived from the farm, which were due and owing to Snitzers. We do not agree with the contention that the failure to appoint a receiver was, in essence, a finding by the court that the land was adequate security and therefore worked as a bar to prevent the collection of any sums due on the Assignment. The appointment of a receiver rests in the sound legal discretion of the trial court. Mosher v. Lount, 29 Ariz. 267, 240 P. 1027 (1925). The appointment of a receiver destroys no vested rights, nor does it determine any rights as between parties which exist by virtue of a pre-existing contract. Seay v. Diversified, Inc., 382 S.W.2d 518 (Tex.Civ.App.1964). A fortiori, the *failure to appoint a receiver* cannot operate as a determination of the enforceability of contractual rights. D & S' reliance on the case of Meason v. Ralston Purina Co., supra, is misplaced. In *Meason,* the defendant, a chattel mortgagee, prevented the sale of turkeys allegedly covered by its chattel mortgage. The court held that there was a jury question as to whether or not the turkeys were in fact covered by the mortgage. *Meason* is inapposite to the case *sub judice.*

■■ The letter sent by Producers to Hughes & Ganz asked that any sums which Hughes & Ganz owed to Snitzers be paid to Producers. The Assignment clearly gave to Producers superior rights to all such sums. If the interference is done in a reasonable and bona fide attempt to protect one's own rights, then the interference is privileged. Meason v. Ralston Purina Co., supra; W. Prosser, The Law of Torts § 123, at 969 (3rd ed. 1964); Interference with Contract Relations, 41 Harvard Law

Review 728, 745–46 (1928); Am.Jur.2d, Interference § 27, pp. 304–305. Producers had the right, after the hearing on the receivership, to notify Hughes & Ganz of the Assignment.

Judgment affirmed.

HATHAWAY and STEVENS, JJ., concur.