536 P.2d 1072

Charles MIDDLETON dba TV Leo's and Trudy Middleton, his wife, Appellants,

v.

WALLICHS MUSIC AND ENTERTAINMENT COMPANY, INC., dba Wallichs Music City, Appellees.

No. I CA–CIV 2242.

Court of Appeals of Arizona, Division 1, Department B.

June 19, 1975.

Brown & Galasky by Andrew G. Galasky, and Cunningham, Goodson & Tiffany, Ltd., by John F. Goodson, Phoenix, for appellants.

Perry & Head by Dale A. Head, Phoenix, for appellees.

## OPINION

HAIRE, Chief Judge, Division 1.

On this appeal we are required to determine whether the trial judge erred in directing a verdict against appellants' claim for intentional interference with appellants' claimed rights under a restrictive competition covenant in the lease. The covenant in question reads as follows:

> "Lessor hereby covenants and agrees that it will not enter into a lease with any tenant if the tenant is primarily engaged in a television, radio and high-fidelity sales and service business."

The lessor sued the tenant (appellants) for amounts due under the lease provisions.[1] The tenant then counterclaimed

---

1. The "lessor" and "tenant" are actually successors in interest to the original lease parties.

No issues have been raised concerning the binding effect of the restrictive covenant on

against the lessor asserting two counts. The first count alleged that the lessor had breached the above-quoted covenant by entering into a subsequent lease with appellee, Wallichs Music City. The second count of the tenant's counterclaim against the lessor was based upon the same facts, but asserted as a legal premise an intentional and willful interference with an advantageous contractual relationship, apparently with a view to enabling the tenant to collect punitive damages from the lessor.

In addition to the two count counterclaim against the lessor, the tenant also filed a third party complaint against the appellee, Wallichs Music City. The claim asserted against Wallichs Music City alleged that Wallichs had intentionally and willfully interfered with the tenant's advantageous contractual relationship with the lessor by inducing the lessor to breach the above-quoted restrictive covenant contained in the tenant's lease.

After a jury trial, the trial judge directed a verdict in favor of Wallichs Music City on the tenant's claim for tortious interference. The jury returned a verdict in favor of the lessor on its claim for rental due from tenant in the amount of $30,322.-65. On Count I of the tenant's counterclaim against the lessor, the jury returned a verdict in favor of the tenant in the amount of $38,000. A formal written judgment was entered in accordance with the verdicts, and the tenant has appealed from that portion of the judgment in favor of Wallichs Music City on the third party complaint for tortious interference.[2]

■ The legal principles to be applied in determining the propriety of a directed verdict are well established in Arizona. In considering a motion for directed verdict the trial judge must consider all competent evidence and the inferences to be drawn therefrom most strongly against the moving party in order to determine whether or not a *prima facie* case has been presented. Ruiz v. Faulkner, 12 Ariz.App. 352, 470 P. 2d 500 (1970). A *prima facie* case requires that there be evidence to justify, not necessarily compel, an inference of liability. A *prima facie* case is one which, simply stated, gets the case to the jury for consideration. Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288 (1966). The motion admits the truth of whatever competent evidence the opposing party has introduced, including all inferences that can be reasonably drawn therefrom. E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970). The facts pertinent to the disposition of this appeal will be stated in accordance with the foregoing principles.

■ The legal basis for a cause of action for tortious inducement to breach a contract has long been recognized in this jurisdiction. *See* Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224 (1940). There the court stated that the claim is based upon the proposition that a contract is a property right and that a party to a contract has a cause of action against a third person who procures its breach by the other party unless the acts of that person are performed in the legitimate exercise of his own rights. In order to prove a claim for tortious inducement to breach a contract, the claimant must show: (1) the existence of a contract, Pre-Fit Door, Inc. v. Dor-Ways, Inc., 13 Ariz.App. 438, 477 P.2d 557 (1970); (2) the defendant's knowledge thereof, McNutt Oil & Refin-

the present parties. Therefore, for convenience, they are referred to in this opinion as though they were the original parties to the lease.

2. Tenant's recovery against the lessor was based upon the breach of lease count. The count charging the *lessor* with tortious interference had previously been dismissed. Tenant's net judgment against the lessor has been fully paid and satisfied by the lessor, and the only questions raised on this appeal relate to tenant's claimed rights against Wallichs Music City.

ing Co. v. D'Ascoli, 79 Ariz. 28, 281 P.2d 966 (1955); (3) a breach of the contract induced by the defendant, Equitable Life & Casualty Insurance Co., Inc. v. Rutledge, 9 Ariz.App. 551, 454 P.2d 869 (1969); McNutt Oil & Refining Co. v. D'Ascoli, *supra*; (4) the absence of privilege or justification, Meason v. Ralston Purina Co., *supra;* D & S Farms v. Producers Cotton Oil Co., 16 Ariz.App. 180, 492 P.2d 429 (1972); and (5) damages resulting therefrom, including punitive damages if supported by the facts, McNutt Oil & Refining Co. v. D'Ascoli, *supra.* See generally, Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098 (1951); 45 Am.Jur.2d, Interference, § 39. Restatement of Torts, Vol. 4, § 766 (1939).

Although we have found no decisions in which the courts have approved the allowance of a claim of the nature here involved based upon the induced breach of a restrictive leasing covenant, in McNutt Oil & Refining Co. v. D'Ascoli, *supra,* the Arizona Supreme Court affirmed the trial court's judgment awarding the plaintiff damages against the defendant accused of inducing a violation by the sellers of a covenant not to compete entered into as part of a service station sale agreement. We see no logical reason why the same principles should not be applicable so as to afford relief for the tortious inducement to breach an otherwise legally enforceable restrictive leasing covenant.

Turning to the facts here presented, and applying those facts to the above-listed elements of a claim for tortious interference, there can be no question but that there was a contract in existence, and that Wallichs Music City had knowledge of the existence of the restrictive leasing covenant in that contract before it entered into its subsequent lease with the lessor. However, the third element presents a problem—the showing of a breach of that restrictive covenant *induced by Wallichs Music City.* For the purposes of this opinion, we will

assume, without deciding, that the evidence was adequate to present a jury question as to whether the lessor's conduct in entering into the lease with Wallichs Music City constituted a breach of the restrictive covenant. The major question is, was that breach "induced" by Wallichs Music City?

The mere fact that Wallichs Music City contracted with the lessor with knowledge of the existence of the restrictive covenant and its possible breach by lessor in entering into the subsequent lease with Wallichs, is not, according to the better view, the equivalent of improper inducement. *See* Wolf v. Perry, 65 N.M. 457, 339 P.2d 679 (1959); Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47 (10th Cir. 1963).

Restatement of Torts, Vol. 4, § 766, Comment *i* at 59 (1939) states as follows:

> "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person. · · · For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section."

In the above illustration it will be noted that B, a party to the original contract with C, is the moving party who offers to sell to A, and that A merely accepts the offer, albeit with knowledge that *ipso facto* there is occasioned a breach of B's contract with C. Under such circumstances, the "inducing" has originated with B, and A has no liability. Even if we were to assume that A had taken the initial affirmative action, the Restatement recognizes that A still might not be guilty of tortious

inference unless the solicitation proceeds beyond the normal and regular course of A's business solicitations. Thus Comment *h* states, in part:

"A's freedom to conduct his business in the usual manner, to advertise his goods, to extol their qualities, to fix their prices and to sell them is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B's contract with C, he may nevertheless send his regular advertising to B and may solicit business in normal course. Such conduct does not constitute inducement of breach of the contract." § 766 at 58–59

Of course, if A offers a special price as consideration for the express purpose of inducing a breach, then he is liable. See Illustration 5, Comment *h*, Restatement § 766.

The thread running through the decisions and the Restatement indicates a balancing of competing interests, with the existence of affirmative, unduly persuasive, initiating conduct on the defendant's part in bringing about the breaching action weighing in favor of a finding of liability.[3]

■ Reviewing the evidence in this case in a light most favorable to the tenant, it is very obvious that the affirmative, initiating and inducing action responsible for the assumed breach of the restrictive covenant originated with, and flowed from, the lessor, and not from the appellees. The allegedly offending lease with Wallichs Music City was entered into in November of 1968. Witness John L. Holmes, who was at all pertinent times the general managing partner of the lessor, testified that the space leased to Wallichs had been vacant

for about a year prior to the time Wallichs moved in; that he had first contacted Clyde Wallich in May of 1965 in an attempt to get Wallichs as a tenant, but that he was not interested in coming to Phoenix at that time. Mr. Holmes stated that over a period from May 1965 to late Spring 1968 he visited with Clyde Wallich and his staff in Los Angeles eight to ten times, trying to show him what a growing area Phoenix was and how advantageous it would be if their successful regional chain would come into metropolitan Phoenix; that these negotiations finally culminated in Wallichs becoming a tenant in 1968 pursuant to a franchising arrangement.

In our opinion the foregoing facts demonstrate an affirmative and activated predisposition and action on the lessor's part which negates any basis for a finding that Wallichs Music City tortiously induced lessor to breach his contract with the tenant. It is true, as pointed out by the tenant, that in the terminal stages of these inducing efforts by the lessor, Holmes (the general manager of the lessor) acquired a small stockholding interest in Wallichs Music City as a party of a financing arrangement to enable Wallichs to enter into the lease; that he believed that he would benefit as such a stockholder when the lease was consummated; that he became a board member and treasurer of Wallichs Music City; and that advertising by Wallichs in Phoenix media was designed to increase Wallichs sales in the category of items specified in the restrictive leasing covenant. However, we find no basis in these facts which would support a jury finding that Wallichs Music City *induced the lessor* to breach his contract with tenant.

Having concluded that the trial judge correctly directed a verdict for Wallichs

---

3. *See* Restatement of Torts, Vol. 4, § 766, Comment *b*, "Historical development and rationale" at 53 (1939), as follows:
"The plaintiff's interest in his commercial expectancies must be weighed, however, against the defendant's interest in freedom of action. Where the defendant's conduct is predatory the scale on his side may weigh very lightly, but where his conduct is not predatory it may weigh heavily."

Music City on the above issue, we need not consider other substantial contentions urged by Wallich in support of the trial court's decision.

The judgment of dismissal is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.