613 F.2d 751
 1980-1 Trade Cases 63,134
 Dixon D. COWLEY, dba Cowley Pump and Supply, Graham L.
Cowley and Hugh H. Cowley, dba Cowley Bros.
Supply, and Carder, Inc., dba Ranchers
Supply Company, Plaintiffs-Appellants,
v.
BRADEN INDUSTRIES, INC., a Delaware corporation doing
business in the State of Arizona, Defendant-Appellee.
 No. 77-3272.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 8, 1980.
Rehearing Denied March 4, 1980.
 
 Leo R. Beus, Jennings, Strouss & Salmon, Phoenix, Ariz., for plaintiffs-appellants.
 Roger R. Scott, Tulsa, Okl., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before CHOY and KENNEDY, Circuit Judges, and WILLIAMS,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 This case arises from a dispute between a manufacturer and its former distributor. The distributor, and a retailer to whom it had made sales, both brought suit against the manufacturer in the District Court for the District of Arizona, alleging violations of federal and state antitrust laws and a state tort claim. The manufacturer filed a counterclaim for amounts due on products delivered to the distributor. The case was tried without a jury, and the trial court found for the manufacturer on all counts of the complaint, and also on the counterclaim. The distributor and the retailer appeal from the judgment, and we affirm.
 
 
 2
 The appellants are Dixon D. Cowley (Cowley), the former Arizona distributor of Aeromotor products, and Carder, Inc. (Carder), a Colorado retailer which purchased the products in question from Cowley. The manufacturer is appellee Braden Industries, a corporation which manufactures windmills and pumps through its Aeromotor Division. We shall refer to Braden Industries as "Aeromotor."
 
 
 3
 The principal concern in the litigation is the marketing and distributing system established by Aeromotor for the sale of windmills manufactured by it. Aeromotor has for some years occupied approximately 70 percent of the windmill market nationwide. The windmills are used primarily for providing stock water in cattle ranching country. Aeromotor also sold pumps, though not necessarily for use in conjunction with the windmills. Aeromotor was a relative newcomer in the pump market.
 
 
 4
 Aeromotor used a bifurcated distribution system. One channel of distribution was through sales by company-owned outlets or branches; the other was through sales by independent distributors. Distributorships were established to serve particular geographic areas. Aeromotor agreed its branches would not compete with distributors in any given territory. In addition, Aeromotor established a policy which discouraged distributors from selling within the territory of another distributor. Under Aeromotor's announced policy, distributors could sell outside their territories if: (1) the goods first came to their territories; (2) the items were placed in stock; and (3) the distributors were not "actively soliciting business outside their assigned territory."
 
 
 5
 Cowley held the distributorship for Aeromotor products in the State of Arizona. In violation of the distribution agreement, Cowley began selling windmills to purchasers in Colorado, including Carder, without first shipping the windmills through Arizona. Carder was reselling the windmills at substantially lower prices than the authorized Aeromotor dealer for Colorado, one Dean Bennett. After Bennett complained and Aeromotor warned Cowley, Aeromotor terminated Cowley for persisting in making sales to Carder. Cowley and Carder then commenced the present litigation, alleging illegal territorial restraints, monopolization and attempted monopolization, price discrimination, refusal to deal, interference with contract rights,[1] and violations of the antitrust laws of Arizona and Colorado.
 
 Territorial Restraints
 
 6
 The principal issue in this case involves Aeromotor's admitted policy concerning sales to distributors. The restrictions imposed by the manufacturer on its distributors to limit sales in a geographic area are a type of vertical restraint. Although the restraints imposed by Aeromotor did not prohibit outright sales outside of a distributor's primary area, their enforcement would make such sales economically unfeasible or, at least, significantly less profitable.
 
 
 7
 Vertical restraints are governed by the rule of reason. See Continental T. V. Inc. v. GTE Sylvania, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), Overruling United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The basic inquiry under the rule of reason is whether the restraint in question "is one that promotes competition or one that suppresses competition." National Society of Professional Engineers v. United States, 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). Courts determine whether the distribution system is unreasonable in view of "the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable." Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 682 (1918); Ackerman-Chillingworth v. Pacific Electrical Contractors Ass'n, 579 F.2d 484 (9th Cir. 1978), Cert. denied, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); National Auto Brokers Corp. v. General Motors Corp., 572 F.2d 953 (2d Cir. 1978), Cert. denied, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).
 
 
 8
 The trial court ruled that appellants failed to establish the distribution system in question was unreasonable. Appellants attempt to compensate for their failure to proffer adequate evidence by claiming that Aeromotor, as defendant, had the burden of proving the restraints reasonable. They argue that when a defendant with substantial market power restrains trade, the burden shifts to him to show that the restraints are reasonable. Appellants cite Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), Purex Corp. v. Procter & Gamble Co., 596 F.2d 881 (9th Cir. 1979), and Greyhound Computer Corp. v. IBM Corp., 559 F.2d 488 (9th Cir. 1977), Cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978), to support this contention.
 
 
 9
 We find no support in any of these cases for appellants' argument. None of these cases involved application of the rule of reason or discussed the burden of proof in such cases. Purex and Brunswick involved the application of section 7 of the Clayton Act to corporate acquisitions; Greyhound involved a claim for monopolization and attempted monopolization under section 2 of the Sherman Act.
 
 
 10
 The burden to prove a vertical restraint unreasonable is part of the plaintiff's case in chief. See Magnus Petroleum Co. v. Skelly Oil Co., 599 F.2d 196, 204 (7th Cir.), Cert. denied, --- U.S. ----, 100 S.Ct. 231, 62 L.Ed.2d 171 (1979). The plaintiff in an antitrust action in which the rule of reason governs "must evince a substantially adverse effect on competition in the relevant market to support a viable legal theory." Mutual Fund Investors v. Putnam Management Co., 553 F.2d 620, 627 (9th Cir. 1977). "Unless the alleged anticompetitive conduct is Per se unreasonable, the fact that the conduct restrained trade in a relevant market is an essential part of a plaintiff's case . . . and The burden of establishing it lies on him." Gough v. Rossmoor Corp., 585 F.2d 381, 385 (9th Cir. 1978) (emphasis added), Cert. denied, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979); Knutson v. Daily Review, Inc., 548 F.2d 795 (9th Cir. 1976), Cert. denied, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); Cataphote Corp. v. DeSoto Chemical Coatings, Inc., 450 F.2d 769 (9th Cir. 1971), Cert. denied, 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972). Appellants simply failed to meet this burden. At trial they used lances to tilt with the windmills and on appeal it is too late to avail themselves of the proper weapons and a different target. We decline to alter the burden of persuasion to compensate for the deficiencies of appellants' trial strategy.
 
 
 11
 In applying the GTE Sylvania standard, the trial court held that the territorial restraints were reasonable for three reasons. First, the requirement that a distributor take goods into his trade area before selling them improved the efficiency in marketing since it ensured the distributor's maintenance of a proper stock of goods and its intense promotion of sales in the assigned area. Second, there was no showing by appellants of any effective, alternate means to maintain an efficient distributor system. Third, there was no evidence that interbrand competition was harmed by Aeromotor's shipping policy. These findings of fact were fatal to the appellants' case.
 
 
 12
 The findings of the district court will stand unless they are clearly erroneous and not supported by substantial evidence. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Smith v. James Irvine Foundation, 402 F.2d 772 (9th Cir. 1968), Cert. denied, 394 U.S. 1000, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Chorak v. RKO Radio Pictures, 196 F.2d 225 (9th Cir. 1952). We are unable, due to appellants' failure to adduce sufficient evidence to show that the restraints violated the rule of reason standard, to rule that the district court erred.
 
 
 13
 The district court noted that "the absence of proof in these significant areas . . . may have been significantly affected since the case was presented originally on the basis of a per se violation under the Schwinn standard." When appellants filed their case, the per se rule of United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967) was in effect. Nine months prior to the district court's judgment, but two months after trial, we announced our decision in GTE Sylvania Inc. v. Continental T. V., Inc., 537 F.2d 980 (9th Cir. 1976) (en banc), Aff'd 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). In our opinion in GTE Sylvania, we chose to read Schwinn narrowly, holding that its per se ban on vertical restraints applied only to manufacturer restrictions on the sale of products outside the dealer's exclusive territory. Because Aeromotor allowed distributors to sell windmills outside their assigned territories, the district court correctly concluded that our opinion in GTE Sylvania was controlling and applied the rule of reason to the vertical restraints in question.
 
 
 14
 The Supreme Court affirmed our en banc opinion in GTE Sylvania but concluded that "Schwinn is indistinguishable from the location restriction in the present case." 433 U.S. at 46, 97 S.Ct. at 2555. In overruling Schwinn, the Court held that nonprice restrictions should be tested under the rule of reason. Since we had already concluded that vertical restrictions such as those in this case were properly governed by the rule of reason, the applicable legal standard did not change. The district court issued a second opinion reanalyzing the vertical restraints in light of the Supreme Court's decision in GTE Sylvania and reached the same conclusions as it did in its first opinion.
 
 
 15
 Neither in their motion for new trial below nor in their appeal before this court have appellants argued that they were prejudiced in any way by the overruling of Schwinn. Indeed, the thrust of appellants' argument on appeal has been that Aeromotor's marketing practices violated section 1 of the Sherman Act whether tested under the rule of reason or a per se rule. We must conclude, due to appellants' failure to raise the issue, that no prejudice in fact occurred. See Del Rio Distributing, Inc. v. Adolph Coors Co., 589 F.2d 176 (5th Cir.), Cert. denied, --- U.S. ----, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979).
 
 Monopoly
 
 16
 Appellants further alleged that Aeromotor monopolized or attempted to monopolize the windmill industry in violation of section 2 of the Sherman Act. To establish a violation of section 2, it is necessary to prove two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). Without addressing the question of whether appellants had standing to raise a section 2 claim, See In re Multidistrict Vehicle Air Pollution M. D. L. No. 31, 481 F.2d 122 (9th Cir. 1972), Cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973), we believe that the district court properly concluded that appellants failed to meet their burden of proof under the Grinnell test.
 
 
 17
 The district court found, and the evidence established, that Aeromotor has a predominant position in the windmill market. It controls between 70 and 80 percent of that market, both nationally and in Colorado and Arizona. Thus, the first part of the Grinnell test was met. There was no evidence, however, that Aeromotor acquired or maintained its market position through the use of predatory conduct as required by the second part. Appellant failed to prove its allegation that Aeromotor used its dominant position in the windmill market to improve its pump sales by tying pump sales to windmill sales. Further, we have concluded that the territorial restrictions were not shown to be unreasonable, and there is no evidence that these restraints were used with predatory intent.
 
 State Claims
 Antitrust Claims
 
 18
 Appellants claimed that Aeromotor's conduct violated the Colorado and Arizona antitrust laws. Because appellants have not cited, nor have we found, any authorities which have held conduct similar to Aeromotor's to be unlawful under Arizona or Colorado antitrust law, we affirm the judgment of the district court that there were no state antitrust violations.
 
 Counterclaim
 
 19
 Aeromotor counterclaimed for $12,426.61 which Cowley owed for purchases of Aeromotor products made prior to Cowley's termination as a distributor. Cowley does not dispute the amount that he owed, but contends that Aeromotor is barred from asserting the claim because it has not complied with Ariz.Rev.Stat. § 10-481 which requires registration of foreign corporations doing business in the state. Ariz.Rev.Stat. § 10-482 further provides:
 
 
 20
 No foreign corporation shall transact business in this state until it has complied with the requirements of § 10-481, and every act done prior thereto is void.
 
 
 21
 The district court held that it was not necessary to decide whether the character and quantity of Aeromotor's activities in Arizona were such as to make it subject to the registration requirement of section 10-481. The court concluded that, even assuming the necessity for registration, section 10-482 did not void the transactions because the products were purchased outside the state.
 
 
 22
 We believe that the district court was correct. See Neiderhiser v. Henry's Drive-In, Inc., 96 Ariz. 305, 394 P.2d 420 (1964) (Section 10-482 does not apply to an act done outside the state.). In Ranch House Supply Corp. v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962), the Supreme Court of Arizona held that a corporation was not doing business in Arizona when it marketed units through franchise dealers in Arizona but the contract was executed in California and the purchase price was fixed at f. o. b. price in California. Here, Cowley purchased Aeromotor products at factory outlets in Texas or Oklahoma and brought the products into Arizona. We conclude that Aeromotor was not transacting business in Arizona for purposes of section 10-482.
 
 
 23
 Finally, appellants contend that if Aeromotor's conduct violated either state or federal antitrust law, then recovery on the counterclaim is barred under Ariz.Rev.Stat. § 44-1405(A) & (B) which permits a party to defend on the ground that the claim grew out of illegal conduct on the part of the claimant. Because we have found no violation of federal or state antitrust law, we find it unnecessary to reach this issue.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The district court's ruling on the Robinson-Patman Act claim is not being appealed to this court. Upon due consideration of the refusal to deal and interference with contract claims, we agree with the district court that they are without merit
 The district court correctly concluded that the validity of the refusal to deal claim depended on whether the underlying exclusive dealership arrangement and concomitant territorial restrictions constituted unreasonable restraints of trade. Because we conclude Infra that these restrictions were not shown to be unlawful, the district court's finding that there was no illegal boycott was correct.
 Appellants' claim of tortious interference with contract or prospective business advantage is meritless because appellants proffered no evidence at trial to indicate that Aeromotor had knowledge of a valid contract as required by Arizona law. See Middleton v. Wallichs Music and Entertainment Co., 24 Ariz.App. 180, 536 P.2d 1072 (1975).